UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


CHARLES MARTIN,

                    Petitioner,

vs.                                    Case No. 3:16-cv-170-J-39JBT

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

                    Respondents.
_____

**ORDER**

**I.  STATUS**

Petitioner Charles Martin, an inmate of the Florida penal system, challenges a 2008 (Duval County) conviction for attempted murder in the second degree, attempted armed robbery, armed robbery, aggravated fleeing or attempting to elude a law enforcement officer, and possession of a firearm by a convicted felon.  Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Petition) (Doc. 1).  He raises three grounds for habeas relief in the Petition.  The Court will address these three grounds, see Long v. United States, 626 F.3d 1167, 1169 (11th Cir. 2010) ("The district court must resolve all claims for relief raised on collateral review, regardless of whether relief is granted or denied.") (citing Clisby v. Jones, 960 F.2d 925, 936 (11th Cir. 1992) and Rhode v. United States, 583 F.3d 1289, 1291

(11th Cir. 2009)), but no evidentiary proceedings are required in this Court.

Respondents filed an Answer in Response to Order to Show Cause and Petition for Writ of Habeas Corpus (Response) (Doc. 13) and Exhibits.[1]  The Court accepted Petitioner's Response (Doc. 20) as his reply and notice that he will rely on the allegations and claims as stated in the Petition.  <u>See</u> Orders (Docs. 6 & 21). Respondents provide a comprehensive rendition of the procedural history of the case, and it will not be repeated here.  Response at 1-3.

## II.  CLAIMS OF PETITION

Petitioner presents three grounds in the Petition:  (1) the trial court deprived Petitioner of his due process rights by accepting his plea and sentencing him without holding a competency hearing, as he was incompetent; (2) the ineffective assistance of counsel for failure to follow through with the competency proceeding, resulting in an involuntary and unknowing plea; (3) a due process violation due to the imposition of consecutive minimum mandatory sentences for counts one and five, constituting an illegal sentence.

---

[1] The Court hereinafter refers to the Exhibits as "Ex."  Where provided, the page numbers referenced in this opinion are the Bates stamp numbers at the bottom of each page of the exhibit. Otherwise, the page number on the particular document will be referenced.  The Court will reference the page numbers assigned by the electronic docketing system where applicable.

## III.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs a state prisoner's federal petition for habeas corpus. See 28 U.S.C. § 2254; Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S.Ct. 1432 (2017).  "AEDPA limits the scope of federal habeas review of state court judgments[.]" Pittman v. Sec'y, Fla. Dep't of Corr., 871 F.3d 1231, 1243 (11th Cir. 2017).  As such, AEDPA ensures that federal habeas relief is limited to extreme malfunctions, and not used as a means to attempt to correct state court errors.  Ledford, 818 F.3d at 642 (quoting Greene v. Fisher, 132 S.Ct. 38, 43 (2011)).

The parameters of review are as follows:

> Thus, under AEDPA, a person in custody pursuant to the judgment of a state court shall not be granted habeas relief on a claim "that was adjudicated on the merits in State court proceedings" unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or ... was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "For § 2254(d), clearly established federal law includes only the holdings of the Supreme Court—not Supreme Court dicta, nor the opinions of this Court." Taylor v. Sec'y, Fla. Dep't of Corr., 760 F.3d 1284, 1293-94 (11th Cir. 2014).
>
> As for the "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite

to that reached by [the Supreme Court] on a
question of law or if the state court decides
a case differently than [the Supreme Court]
has on a set of materially indistinguishable
facts." <u>Terry Williams v. Taylor</u>, 529 U.S.
362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389
(2000). Under the "unreasonable application"
clause, a federal habeas court may "grant the
writ if the state court identifies the correct
governing legal principle from [the Supreme
Court's] decisions but unreasonably applies
that principle to the facts." <u>Id</u>. at 413, 120
S.Ct. 1495. "In other words, a federal court
may grant relief when a state court has
misapplied a 'governing legal principle' to 'a
set of facts different from those of the case
in which the principle was announced.'"
<u>Wiggins v. Smith</u>, 539 U.S. 510, 520, 123 S.Ct.
2527, 156 L.Ed.2d 471 (2003) (quoting <u>Lockyer
v. Andrade</u>, 538 U.S. 63, 76, 123 S.Ct. 1166,
155 L.Ed.2d 144 (2003)). And "an 'unreasonable
application of' [Supreme Court] holdings must
be objectively unreasonable, not merely wrong;
even clear error will not suffice." <u>Woods v.
Donald</u>, ––– U.S. ––––, 135 S.Ct. 1372, 1376,
191 L.Ed.2d 464 (2015) (per curiam) (quotation
omitted). To overcome this substantial hurdle,
"a state prisoner must show that the state
court's ruling on the claim being presented in
federal court was so lacking in justification
that there was an error well understood and
comprehended in existing law beyond any
possibility for fairminded disagreement."
<u>Harrington v. Richter</u>, 562 U.S. 86, 103, 131
S.Ct. 770, 178 L.Ed.2d 624 (2011). This is
"meant to be" a difficult standard to meet.
<u>Id</u>. at 102, 131 S.Ct. 770.

<u>Pittman</u>, 871 F.3d at 1243-44.

There is a presumption of correctness of state court's factual
findings, unless the presumption is rebutted with clear and
convincing evidence. 28 U.S.C. § 2254(e)(1). The standard of
proof is demanding, requiring that a claim be highly probable.

Bishop v. Warden, GDCP, 726 F.3d 1243, 1258 (11th Cir. 2013), cert. denied, 135 S.Ct. 67 (2014). Also, the trial court's determination will not be superseded if reasonable minds might disagree about the factual finding. Brumfield v. Cain, 135 S.Ct. 2269, 2277 (2015). Also of note, "[t]his presumption of correctness applies equally to factual determinations made by the state trial and appellate courts." Pope v. Sec'y for Dep't of Corr., 680 F.3d 1271, 1284 (11th Cir. 2012) (quoting Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003)), cert. denied, 568 U.S. 1233 (2013).

In applying AEDPA deference, the first step is to identify the last state court decision that evaluated the claim on its merits. Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016).[2] Once identified, the Court reviews the state court's decision, "not necessarily its rationale." Pittman, 871 F.3d at 1244 (quoting Parker v. Sec'y for Dep't of Corr., 331 F.3d 764, 785 (11th Cir. 2003) (citation omitted)).

Regardless of whether the last state court provided a reasoned opinion, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law

---

[2] As suggested by the Eleventh Circuit in Butts v. GDCP Warden, 850 F.3d 1201, 1204 (11th Cir. 2017), cert. denied, No. 17-512, 2018 WL 491544 (U.S. Jan. 22, 2018), in order to avoid any complications if the United States Supreme Court decides to overturn Eleventh Circuit precedent as pronounced in Wilson v. Warden, Ga. Diagnostic Prison, 834 F.3d 1227 (11th Cir. 2016) (en banc), cert. granted, 137 S.Ct. 1203 (2017), this Court, will employ "the more state-trial-court focused approach in applying § 2254(d)[,]" where applicable.

procedural principles to the contrary." <u>Harrington v. Richter</u>, 562 U.S. 86, 99 (2011). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." <u>Richter</u>, 562 U.S. at 99-100 (citing <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991)).

Where the last adjudication on the merits is unaccompanied by an explanation, the petitioner must demonstrate there was no reasonable basis for the state court to deny relief. <u>Id</u>. at 98. "[A] habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the] Court." <u>Richter</u>, 562 U.S. at 102; <u>Marshall</u>, 828 F.3d at 1285.

Although the § 2254(d) standard is difficult to meet, it was meant to be difficult. <u>Rimmer v. Sec'y, Fla. Dep't of Corr.</u>, 876 F.3d 1039, 1053 (11th Cir. 2017) (opining that to reach the level of an unreasonable application of federal law, the ruling must be objectively unreasonable, not merely wrong or even clear error). Indeed, in order to obtain habeas relief, "a state prisoner must show that the state court's ruling on the claim being presented . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Richter</u>, 562 U.S. at 103.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner claims he received the ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution.  In order to prevail on this Sixth Amendment claim, he must satisfy the two-pronged test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 688 (1984), requiring that he show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different).

With respect to an ineffective assistance challenge to the voluntariness of a guilty or no contest plea, a petitioner must show there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985).  Of note, ineffective assistance of counsel may also require that a plea be set aside on the ground that it was involuntary because voluntariness implicates not only threats and inducements but also ignorance and incomprehension.  <u>See</u> <u>id</u>. at 56 (quoting <u>North Carolina v. Alford</u>, 400 U.S. 25, 31 (1970)) (noting that the "longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'").

This Court recognizes that,

in a post conviction challenge to a guilty plea:

> [T]he representations of the defendant, his lawyer, and the prosecutor at [the plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

> Blackledge v. Allison, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977) (citations omitted); see also United States v. Gonzalez-Mercado, 808 F.2d 796, 799-800 and n. 8 (11th Cir. 1987) (while not insurmountable, there is a strong presumption that statements made during a plea colloquy are true, citing Blackledge and other cases).

Bryant v. McNeil, No. 4:09CV22-SPM/WCS, 2011 WL 2446370, at *2 (N.D. Fla. May 17, 2011) (Report and Recommendation), report and recommendation adopted by Bryant v. McNeil, No. 4:09CV22-SPM/WCS, 2011 WL 2434087 (N.D. Fla. June 16, 2011).

## V. THE PLEA

To provide historical context, the Court provides a brief summary of the plea proceeding and conviction and sentence. Petitioner was charged by second amended information with attempted murder in the second degree, attempted armed robbery, armed robbery, aggravated fleeing or attempting to elude a law enforcement officer, and possession of a firearm by a convicted

felon.  Ex. A at 109-10.  Petitioner faced a maximum sentence of life in prison.  _Id_. at 126-27.  The day of trial (the jury had already been selected), he tendered a plea of guilty to the court.[3]  _Id_., Plea of Guilty at 112-13; Plea Transcript at 20.

At the plea proceeding, counsel announced:

> Your Honor, I met with Mr. Martin last night.  We had a very long conversation about the case.  And he has decided to enter a plea of guilty to Counts 1 through 5, a plea of guilty to the Court.

_Id_., Plea Transcript at 11.

The prosecutor provided the Court with Petitioner's exposure and any relevant minimum mandatory terms.  _Id_. at 11-12.  The state also announced that it was prepared to prove that Petitioner "on June 14th of 2007, did unlawfully and by an act eminently dangerous to another and invincing [sic] a depraved mind regardless of human life attempt to kill Brooke McClain, a human being, by pointing a weapon at Mr. McClain and shooting at him three times, striking him once."  _Id_. at 12-13.  The prosecutor said he was prepared to prove that Petitioner possessed and discharged his firearm, and as a result, the victim suffered great bodily harm, a fractured leg bone, an injury from which he suffered from and was unable to walk for a period of up to one year.  _Id_. at 13.

---

[3] The Plea of Guilty form is signed by Petitioner, his counsel, and the judge.  Ex. A at 112-13.  It is dated July 1, 2008.  _Id_. at 113.

With regard to the second count, the state announced that it was prepared to prove that Petitioner "did unlawfully by force, violence, assault or putting in fear, attempt to take the motor vehicle of Mr. McClain." <u>Id</u>. The state continued, that during the course of the attempted armed robbery, Petitioner possessed that same firearm and discharged it resulting in serious bodily injury and great bodily harm to Mr. McClain, as stated above. <u>Id</u>. With respect to the third count, the state announced that it was prepared to prove that Petitioner carried a firearm on June 14, 2007, and "did unlawfully by force, violence, assault or putting in fear, take the motor vehicle of the victim, Monahed Taer (sic)." <u>Id</u>. at 13-14. The prosecutor said he was prepared to prove that Petitioner pointed the firearm at Mr. Taer, ordered him out of the vehicle, and then Petitioner took the vehicle and drove away. <u>Id</u>. at 14. Furthermore, the prosecutor said he was prepared to prove that during the armed robbery, Petitioner actually possessed a firearm, but did not discharge it. <u>Id</u>.

The state was also prepared to prove, with respect to count four, that after Petitioner took the vehicle from Mr. Taer, Petitioner willfully fled or attempted to allude a law enforcement officer in an authorized law enforcement patrol vehicle, with lights and sirens activated. <u>Id</u>. The prosecutor was also prepared to prove that Petitioner drove at a high speed, with wanton disregard for the safety or property of others, lost control of the vehicle, totaled the vehicle, fled from the damaged vehicle, and

was apprehended. Id. at 14-15. Finally, with respect to count five, the state submitted that it was prepared to prove that Petitioner possessed a firearm, a black 9 mm handgun, after being convicted of a felony, tampering with a witness, in 2007. Id. at 15.

This Court first looks to the plea colloquy of July 1, 2008. After being sworn in, Petitioner confirmed that he understood the charges. Id. at 15-16. The court reviewed Petitioner's exposure as to each count, and asked Petitioner if he understood all the potential sentences. Id. at 16-17. Petitioner confirmed that he did. Id. at 17. The court asked Petitioner if he understood that the court could run the cases consecutively, and Petitioner responded in the affirmative. Id. Petitioner also confirmed that he wanted his attorney to enter a plea on his behalf, recognizing that the court would decide Petitioner's sentence after a presentence investigation report (psi) was completed and the court heard from all of Petitioner's witnesses for sentencing. Id.

The court recognized that there had been some friction between Petitioner and his counsel in the past. Id. The court inquired: "after your conversation with him [W. Charles Fletcher, defense attorney] yesterday afternoon when he came to the jail and you talked with him at length, do you feel satisfied that he has explained to you everything about your case at this point?" Id. at 18. Petitioner said yes. Id. He expressed his belief that the plea was in his best interest, and he announced that he did not

need an additional conference with counsel before going forward with the plea. Id. Petitioner stated that no one had forced him, threatened him, coerced him, or promised him anything, other than the fact that the court would have a sentencing hearing and would consider all the facts presented, Petitioner's criminal history, the psi, and sentencing testimony, and then base the decision on all of that information. Id. at 18-19. Petitioner said he understood. Id. at 19.

Petitioner confirmed that he was not under the influence of anything that would affect his ability to understand the proceeding. Id. Petitioner said he was entering the plea of guilty because he was guilty. Id.

Mr. Fletcher acknowledged that he had read the plea form to Petitioner, line by line. Id. The court inquired as to whether Petitioner understood it, and he said yes. Id. at 20. The court informed Petitioner he was giving up certain rights by entered the plea, and Petitioner acknowledged this fact. Id. The court advised that if Petitioner were to testify at the sentencing proceeding, the court and the state could ask questions, and Petitioner would be required to respond to those questions. Id. at 21.

The court asked if there was any DNA to exonerate Petitioner, and the state said no, explaining:

> There was extensive DNA testing done in
> this case. All of those results have been
> turned over to Mr. Fletcher. And it is

certainly not exonerating, it is quite the opposite.

_Id_. Petitioner's counsel said, "[t]hat's correct." _Id_. Petitioner confirmed that his attorney had talked to him about the DNA evidence. _Id_.

Importantly, the court inquired:

> THE COURT: Okay. Is there anything else that anyone else would like to -- Mr. Fletcher, is it your -- **you have indicated previously that you did not believe there were any issues regarding competency, is that still correct?**
>
> MR. FLETCHER [defense counsel]: Yes, Your Honor, yes.
>
> THE COURT: **Mr. Martin, you are not currently on any medication or anything like that, correct?**
>
> . . . .
>
> THE DEFENDANT: **No.**

_Id_. at 21-22 (emphasis added).

Finally, Petitioner's counsel told the court:

> And I will just add, I did meet with him last night for more than an hour. And we had a very lengthy conversation. **And he understands what is going on, I have no doubt about that.**

_Id_. at 22 (emphasis added).

The court further explained the consequences of entering the plea, notifying Petitioner that if he did not like the sentence, it would be an insufficient reason to set aside the plea. _Id_. at 22-23. Petitioner said he understood and desired to go forward with

- 13 -

the plea.  _Id_. at 23.  When asked if he needed more time to consider the entry of the plea, Petitioner said no.  _Id_

After this extended plea colloquy, the court found a factual basis for the plea.  _Id_. at 23-24.  The court accepted the plea, finding the plea freely and voluntarily rendered.  _Id_.  Finally, the court ordered a psi.  _Id_. at 24.

On August 8, 2008, the court entered judgment.  Ex. A at 114-15.  On August 14, 2008, the court sentenced Petitioner to a term of 35 years imprisonment for count one, 30 years imprisonment on count two, 35 years imprisonment on count three, 15 years imprisonment on count four, and 15 years imprisonment on count five, all to run concurrently.  Ex. A at 117-21; Ex. A, Sentencing Transcript.  The court sentenced Petitioner to a 25-year minimum mandatory term on count one, a 10-year minimum mandatory term on count three, concurrent to count one, and a 3-year minimum imprisonment provision on count five, consecutive to count one. Ex. A at 122-24.  Petitioner did not file a motion to withdraw his plea.

## V.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.  Ground One

In his first ground, Petitioner claims the trial court deprived Petitioner of his due process rights by accepting his plea and sentencing him without holding a competency hearing, as he was incompetent.  Petition at 6.  In their Response, Respondents contend that this ground is unexhausted and procedurally defaulted.

Response at 6-9.  In addressing the question of exhaustion, this Court must ask whether Petitioner's claim was fairly raised in the state court proceedings:

> Before seeking § 2254 habeas relief in federal court, a petitioner must exhaust all state court remedies available for challenging his conviction. <u>See</u> 28 U.S.C. § 2254(b), (c). For a federal claim to be exhausted, the petitioner must have "fairly presented [it] to the state courts." <u>McNair v. Campbell</u>, 416 F.3d 1291, 1302 (11th Cir. 2005). The Supreme Court has suggested that a litigant could do so by including in his claim before the state appellate court "the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" <u>Baldwin v. Reese</u>, 541 U.S. 27, 32, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004). The Court's guidance in <u>Baldwin</u> "must be applied with common sense and in light of the purpose underlying the exhaustion requirement"—namely, giving the state courts "a meaningful opportunity" to address the federal claim. <u>McNair</u>, 416 F.3d at 1302. Thus, a petitioner could not satisfy the exhaustion requirement merely by presenting the state court with "all the facts necessary to support the claim," or by making a "somewhat similar state-law claim." <u>Kelley</u>, 377 F.3d at 1343-44. Rather, he must make his claims in a manner that provides the state courts with "the opportunity to apply controlling legal principles to the facts bearing upon (his) [federal] constitutional claim." <u>Id</u>. at 1344 (quotation omitted).

<u>Lucas v. Sec'y, Dep't of Corr.</u>, 682 F.3d 1342, 1351-52 (11th Cir. 2012), <u>cert</u>. <u>denied</u>, 568 U.S. 1104 (2013).

The doctrine of procedural default requires the following:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments

are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman, supra, at 747–748, 111 S.Ct. 2546; Sykes, supra, at 84–85, 97 S.Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. ––––, ––––, 131 S.Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. ––––, ––––, 130 S.Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S.Ct. 2546.

Martinez v. Ryan, 566 U.S. 1, 9–10 (2012).

Petitioner raised his federal due process claim in the state court system on direct appeal in his pro se brief.[4] Ex. F. However, he did not previously file a motion to withdraw his plea in the trial court. See Castille v. Peoples, 489 U.S. 346, 351 (1989) (raising a claim in a procedural context in which its merits will not be considered does not constitute fair presentation). Of import, Respondents, in their brief, asserted, before raising a

---

[4] Petitioner's counsel filed an Anders[v. California, 386 U.S. 738 (1967)] brief. Ex. E.

competency issue on direct appeal, a defendant must first file a motion to withdraw his plea in the trial court, citing Liebman v. State, 853 So.2d 514, 515 (Fla. 4th DCA 2003), review denied, 865 So.2d 480 (Fla. 2004). Ex. I at 6. Because Petitioner failed to move to withdraw his plea, he raised his due process claim on direct appeal in a procedural context in which its merits would not be addressed. See Rule 9.140(b)(2)(A)(ii)(c), Fla. Rule App. P.

Procedural defaults may be excused under certain circumstances; "[a] petitioner who fails to exhaust his claim is procedurally barred from pursuing that claim on habeas review in federal court unless he shows either cause for and actual prejudice from the default or a fundamental miscarriage of justice from applying the default." Lucas, 682 F.3d at 1353 (citing Bailey v. Nagle, 172 F.3d 1299, 1306 (11th Cir. 1999) (per curiam)). The fundamental miscarriage of justice exception is only available in extraordinary cases upon a showing of "'actual' innocence" rather than mere "'legal' innocence." Johnson v. Ala., 256 F.3d 1156, 1171 (11th Cir. 2001) (citations omitted), cert. denied, 535 U.S. 926 (2002).

Petitioner did not fairly and/or properly present this federal constitutional claim to the state courts. Any further attempts to seek relief in the state courts on this ground will be unavailing. As such, he has procedurally defaulted this claim.

Therefore, Petitioner must demonstrate cause and prejudice. First, Petitioner must demonstrate cause for his default. This

cause has to result from an objective factor external to the defense, and that factor had to prevent Petitioner from raising his constitutional claim which cannot be fairly attributable to his own conduct. <u>Johnson v. Ala.</u>, 256 F.3d at 1171; <u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir.), <u>cert</u>. <u>denied</u>, 528 U.S. 934 (1999). In order for Petitioner to establish prejudice, he must show that the alleged errors actually and substantially disadvantaged his defense resulting in a denial of fundamental fairness. <u>Johnson v. Ala.</u>, 256 F.3d at 1171 (citation omitted).

Upon consideration, the Court finds that Petitioner has not shown cause and prejudice. Finally, Petitioner has failed to show that failure to address this claim on its merits would result in a fundamental miscarriage of justice. This is not an extraordinary case as Petitioner has not made a showing of actual innocence.

In conclusion, the Court finds that ground one is unexhausted and procedurally defaulted. Also of import, the fundamental miscarriage of justice exception is inapplicable to the case at bar. As a result, Petitioner is barred from pursuing ground one in federal court.

In the alternative, the state contends this ground partially presents a state law issue. Response at 6. As noted above, Petitioner raised his claim of denial of his due process rights pursuant to the federal constitution. Therefore, the Court concludes that he did not merely present a state law claim.

Finally and alternatively, Respondents assert that the claim raised in ground one is without merit. Response at 9-13. In considering this ground, the Court's scope of review is restricted because of the finality of the plea proceeding:

> The Supreme Court has given finality to guilty pleas by precluding claims of constitutional deprivations occurring prior to entry of the plea. See Tollett v. Henderson, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). Following the entering of a guilty plea on the advice of counsel, the scope of a federal habeas corpus inquiry is limited to whether the plea was voluntarily and intelligently made; an independent inquiry as to the existence as such of any antecedent constitutional infirmity is improper. Tollett, supra at 266. Only an attack on the voluntary and knowing nature of the plea can be sustained. United States v. Broce, 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927, (1989) ("when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary.)

Middleton v. Sec'y, Dep't of Corr., No. 8:06-cv-217-T-17TBM, 2008 WL 450007, at *4 (M.D. Fla. Feb. 15, 2008) (footnote omitted).

It is axiomatic that, and

> [a]ccording to Tollett v. Henderson, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973), a guilty plea waives a[ll] non-jurisdictional defects:
>
> > [A] a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not

> thereafter raise independent claims
> relating to the deprivation of
> constitutional rights that occurred
> prior to the entry of the guilty
> plea.

United States v. Winslow, Nos. 8:05-cr-377-T-23EAJ, 8:07-cv-683-T-23EAJ, 2007 WL 2302277, at *2 (M.D. Fla. Aug. 8, 2007).

In ground one, Petitioner claims the trial court deprived him of his due process rights by accepting the plea and sentencing him without holding a competency hearing, as he was incompetent. The record reflects the following.

Petitioner faced a life sentence. He was a convicted felon, he had a firearm, and he discharged it. The state's evidence against him was extremely strong, including DNA evidence. The victim had been shot and injured, and he suffered greatly due to his injury.

At the plea proceeding, Petitioner said he was satisfied with counsel and did not need more time to discuss the matter. Petitioner signed the plea form and said he understood it, as his counsel went through it with him line-by-line. Furthermore, Petitioner stated he was not under the influence of anything, including medication.

Defense counsel told the court there were no issues regarding competency. Pointedly, after a lengthy conversation with Petitioner the night before the plea, counsel came to the conclusion that there was no doubt, Petitioner understood what was going on. Defense counsel informed the court of his conclusion.

The record before the Court demonstrates that Petitioner is mildly retarded. He had been previously convicted of a felony offense, apparently without a finding of incompetency as none is referenced. Ex. A, Sentencing Transcript at 26. With respect to the charged offenses, Petitioner's mother wrote a letter to the trial court judge, on February 7, 2008, stating her son was mentally retarded and needs help. Ex. A at 33. Petitioner's mother also said she felt her son was incompetent to stand trial. Id. She attached Social Security Administration and other records finding "mild retardation."[5] Id. at 72.

On May 1, 2008, Mr. Fletcher filed a Motion for Appointment of Mental Health Expert to Evaluate Defendant for Competency and Sanity, and to Test Defendant for Mental Retardation, **and to Report Only to Counsel for the Defendant** pursuant to Rule 3.216(a), Fla. R. Crim. P. Ex. A at 99-100 (emphasis added). The requested appointment is solely for the purpose to assist counsel in the preparation of the defense and "these matters fall within the lawyer-client privilege." State v. Guyton, 445 So.2d 644, 645 (Fla. 4th DCA 1984). In the motion, defense counsel referenced his interactions with the defendant and the defendant's lengthy history

---

[5] Under developmental history, Petitioner's mother reported to the School Social Services Unit, Duval County School Board, that Petitioner fell from a second story porch when he was 1 and 1/2 years of age, which rendered him unconscious for about ten minutes. Ex. A at 38. Petitioner's mother further reported that upon hospitalization, x-rays revealed bleeding in Petitioner's head and a fractured skull. Id.

of mental health problems. Ex. A at 100. Counsel also said there were sufficient grounds to believe the defendant may be mentally retarded. _Id_.

The trial court, on May 1, 2008, entered an Order Appointing Expert for **Confidential Competency, Sanity, and Mental Retardation Evaluation**. _Id_. at 101-104 (emphasis added). The court referenced Rule 3.210(b), Fla. R. Crim. P., and Fla. Stat. § 916.11, and appointed Dr. Steven Bloomfield. _Id_. at 101. The court directed the expert to examine Petitioner in accordance with the provisions of Rule 3.211(a) regarding competency and "whether Defendant has sufficient present ability to consult with his attorney with a reasonable degree of rational understanding and whether he has a rational, as well as factual, understanding of the proceedings against him." _Id_. If incompetency were to be found, the court directed the expert to report on any recommended treatment to return the defendant to competency. _Id_. at 102. The court also directed the expert to address the issue of the defendant's sanity at the time of the commission of the alleged offenses. _Id_. at 103.

In this habeas petition ground, Petitioner complains about the trial court's conduct in accepting the plea and proceeding to sentencing without holding a competency hearing. As noted in the title of the trial court's order, any report from the mental health expert would have been confidential. In this case, competence did not become an issue before the trial court because defense counsel never filed a notice of the defendant's perceived incompetence

under Rule 3.216(c), Fla. R. Crim. P. <u>Guyton</u>, 445 So.2d at 645. Also of note, sanity did not become an issue put before the court because counsel did not file a notice of intent to rely on that defense. <u>Id</u>. Simply, "Rule 3.216(a), Fla. R. Crim. P., provides for one expert to examine a criminal defendant as to possible incompetence to stand trial or insanity at the time of the offense, for the sole purpose of assisting an attorney in defense preparation." <u>Id</u>. Since no notices were filed by counsel, competency and sanity matters were not placed at issue before the trial court.

In conclusion, defense counsel did not trigger additional mechanisms concerning competency by filing the appropriate notice. As such, the trial court did not deprive Petitioner of his constitutional rights under the Due Process Clause by failing to hold a competency hearing.

Alternatively, even if this Court's looks to the state trial court record, based on the representations of defense counsel, the trial court did not perform deficiently by failing to hold a competency hearing, as the need for such a hearing was not triggered. An explanation follows.

A defendant is competent to stand trial if "he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding - and whether he has a rational as well as factual understanding of the proceedings against him.'" <u>Dusky v. United States</u>, 362 U.S. 402, 402 (1960) (per curiam). During the

plea colloquy, defense counsel reassured the court that there were no competency issues, as indicated previously by counsel. Ex. A, Plea Transcript at 22. Petitioner informed the court he was not under the influence of anything, including medication. Id. at 19, 22. Importantly, defense counsel referred to his lengthy conversation with Petitioner the night before the plea, and counsel advised the court that Petitioner, without a doubt, understands what is going on. Id. at 22.

Based on counsel's assurances, the trial court had no reason to doubt that Petitioner had the ability to consult with his lawyer with a reasonable degree of rational understanding of the proceedings. In addition, Petitioner's rational and appropriate responses, and his full and lucid participation in the plea proceeding, demonstrated to the court Petitioner's reasonable degree of rational understanding of the proceedings.

Finally, mild mental retardation does not equate to incompetency. Bradshaw v. State, 744 So.2d 1095, 1096 (Fla. 5th DCA 1999). As long as the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding of the proceedings against him, he is competent to stand trial, regardless if he has an IQ in the mildly mentally retarded range. Padmore v. State, 743 So.2d 1203, 1205 (Fla. 4th DCA 1999). Significantly for this case, evidence of some brain damage, accompanied by learning disabilities and behavioral problems, is insufficient "to raise a legitimate doubt as to

competency[.]" <u>Thompson v. State</u>, 88 So.3d 312, 320 (Fla. 4th DCA 2012) (per curiam).

Petitioner's claim raised in ground one is due to be denied. He is not entitled to habeas relief on this claim as it is without merit.

The question arises as to whether the state court's decision is entitled to deference under AEDPA. Briefly, on direct appeal, Petitioner claimed he was deprived of due process of law by the trial court's failure to have Petitioner evaluated by a mental health expert. Ex. F. He asserted it was a violation of due process of law for the trial court to not take appropriate steps to determine Petitioner's competency to proceed. <u>Id</u>. at 5. In his supplemental brief, he raised the issue of whether the trial court committed fundamental error by sentencing Petitioner without first conducting a competency hearing. Ex. H.

To the extent the 1st DCA addressed the merits of Petitioner's claim, its decision is entitled to AEDPA deference. Ex. J. The adjudication of the state appellate court resulted in a decision that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court. Therefore, Petitioner is not entitled to relief on ground one because the 1st DCA's decision was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based

on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

## B. Ground Two

In his second ground, Petitioner claims he received the ineffective assistance of trial counsel for failure to follow through with the competency proceeding, resulting in an involuntary and unknowing plea.[6]  Petition at 7.  Petitioner raised this claim in his Rule 3.850 motion filed in the state trial court.  Ex. N.

The trial court relied on <u>Strickland</u> in rejecting Petitioner's ineffective assistance of counsel claim, and found that the record of the plea dialogue refuted Petitioner's allegations concerning the plea, and the state's response adequately set forth the basis for denying the claim.  Ex. N at 95-96.  Indeed, there is a strong presumption that Petitioner's solemn declarations in open court are true.  Petitioner did not overcome this presumption.

The trial court held Petitioner could not seek to go behind his sworn testimony and the signed plea agreement as the court may rely on the sworn testimony and agreement.  <u>Id</u>. at 96.  The court refused to give any weight to allegations contradicted by the answers provided at the plea proceeding.  <u>Id</u>.  Relying on the written plea agreement and the lengthy and thorough plea colloquy,

---

[6] To the extent Petitioner reiterates his due process claim, that claim is fully addressed under ground one, and will not be re-addressed here.

the court found Petitioner's claim meritless.  Id.  Finding the record clearly refuting Petitioner's claim, the court denied it.

In denying the claim of ineffective assistance of counsel, the court specifically found Petitioner failed to meet the two-pronged Strickland test.[7]  Id.  As such, the court denied the motion and provided notice that Petitioner could appeal.  Id. at 97. Petitioner appealed.  Id. at 136.  On January 22, 2015, the 1st DCA affirmed per curiam.  Ex. O.  The mandate issued on April 1, 2015. Ex. R.

It is Petitioner's burden to show there was no reasonable basis for the state court to deny relief.  He has not accomplished that task.  Indeed, if there is any reasonable basis for the court to deny relief, the denial must be given deference.  The state appellate court rejected this claim of ineffective assistance of trial counsel, and its decision is entitled to deference.

Here, deference under AEDPA should be given to the state court's adjudication.  Its decision is not inconsistent with Supreme Court precedent, including Strickland and Hill and their progeny.  The state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland and Hill,

---

[7] Upon review of the trial court's order, it set forth the applicable two-pronged Strickland standard as a preface to addressing the claim of ineffective assistance of counsel, and referenced the Hill case setting forth the requirement for meeting the prejudice prong in the context of a guilty plea. Ex. N at 95-96.

or based on an unreasonable determination of the facts. Thus, ground two is due to be denied.

## C. Ground Three

In his third and final ground, Petitioner claims he has been subjected to a constitutional violation, asserting the imposition of consecutive minimum mandatory sentences for counts one and five constitutes an illegal sentence, in violation of due process of law. Petition at 10. Respondents assert this ground is unexhausted, and even if it were exhausted, not cognizable in a federal habeas petition because it is a pure issue of state law.[8] Response at 19.

Petitioner acknowledges that the claim is unexhausted, but seeks a stay and abeyance. Petition at 11. As noted by Respondents, due to the lack of cognizability of the claim in this federal habeas proceeding, there is absolutely no point in staying and abeying the Petition. Response at 20. The Court finds Respondents' point well-taken.

There is no reason to delay this Court's ruling because this ground involves statutory interpretation of a state law by state courts. The writ of habeas corpus under 28 U.S.C. § 2254 "was not enacted to enforce State-created rights." Cabberiza v. Moore, 217 F.3d 1329, 1333 (11th Cir. 2000) (citing Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988)), cert. denied, 531 U.S. 1170 (2001).

---

[8] Notably, Petitioner filed a Motion to Correct Illegal Sentence in the trial court. Ex. S.

The law in this Circuit allows that only in cases of federal constitutional error will a federal writ of habeas corpus be available.  See Jones v. Goodwin, 982 F.2d 464, 471 (11th Cir. 1993); Krasnow v. Navarro, 909 F.2d 451, 452 (11th Cir. 1990). Consequently, federal habeas relief does not lie for errors of state law.  It is certainly not the province of a this Court to reexamine state-court determinations on issues of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is 'couched in terms of equal protection and due process.'"  Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988) (quoting Willeford v. Estelle, 538 F.2d 1194, 1198 (5th Cir. 1976)).

The federal habeas corpus court will be bound by the Florida court's interpretation of its own laws unless that interpretation breaches a federal constitutional mandate.  McCoy v. Newsome, 953 F.2d 1252, 1264 (11th Cir. 1992) (per curiam), cert. denied, 504 U.S. 944 (1992).  Since ground three presents an issue that is not cognizable in this habeas proceeding, this ground cannot provide a basis for federal habeas corpus relief.  Carefully reviewing this ground, there is no breach of a federal constitution mandate. Therefore, the claim raised in ground three is due to be denied.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2.    The **Clerk of the Court** shall enter judgment accordingly and close this case.

3.    If Petitioner appeals the denial of his Petition, **the Court denies a certificate of appealability.**[9]  Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 12th day of March, 2018.

_____
BRIAN J. DAVIS
United States District Judge

--------

[9] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).  Upon due consideration, this Court will deny a certificate of appealability.

sa 3/6
c:
Charles Martin
Counsel of Record